BOGGS, Circuit Judge,
concurring.
I concur in Judge Clay’s thorough analysis of the facts and law in this case. I write separately only to clarify a few important issues involved in this case and to respond to some of the misconceptions in other opinions.
I would have thought that a simple examination of pre-existing First Amendment law would make the following points quite clear. Brandenburg v. Ohio held that obnoxious speech cannot be suppressed, even if the speaker is inciting listeners in favor of such speech, unless the speech is likely to incite those listeners to imminent lawless action directed at others. 395 U.S. 444, 447, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (per curiam). Gregory v. City of Chicago made clear that the government cannot suppress speech (in that case, allegedly provocative demonstrations by civil-rights protestors in Chicago) simply because opponents are threatening to become unruly. 394 U.S. 111, 111-13, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969). As Judge Clay amply demonstrates, everything that happened in this case falls exactly within the above-mentioned cases. The Bible Believers were in a place they had a right to be — a public area — doing what they had a right to do — speaking about their religious beliefs — when they were set upon and put in some degree of physical danger by those who disagreed with their message.
Despite the colorful language in Judge Rogers’s dissent, the motivations of the Bible Believers, and their status as a “majority” or “minority,” are of absolutely no importance as to their legal rights or the legality of the government’s actions, “[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.” Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) (emphases added). “In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his neighbor. To persuade others to his own point of view, the pleader, as we know, at times, resorts to exaggeration, to vilification of men who have been, or are, prominent in-church or state, and even to false statement. But the people of this nation have ordained in the light of history, that, in spite of the probability of excesses and abuses, these liberties are, in the long view, essential to enlightened opinion and right conduct on the part of the citizens of a democracy.” Cantwell v. Connecticut, 310 U.S. 296, 310, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) (emphasis added). “[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought — not free thought for those who agree with us but freedom for the thought *263 that we hate.” United States v. Schwimmer, 279 U.S. 644, 654-55, 49 S.Ct. 448, 73 L.Ed. 889 (1929) (Holmes, J., dissenting) (emphasis added).
Contrary to these precedents, Judge Rogers characterizes the speakers as the disrupters, imposing themselves upon and unsettling unsuspecting passersby. That may or may not be a fair characterization, but it is in no way different from most free-speech cases that arise in public. All of the quotations above are from cases where the speakers upset other people. The Jehovah’s Witnesses in Cantwell, for example, played phonographs criticizing the Roman Catholic Church in a largely Catholic neighborhood, much like the Bible Believers criticized Islam at the Arab International Festival. They may do it out of love or out of hate, but it makes no difference to the First Amendment.
Judge Rogers appears to present a new theory of unprotected speech: speakers are not protected from arrest if they have some subjective intent that violence should be visited upon themselves. No hint of this appears in any previous cases, and Gregory certainly implicitly rejects it. Judge Rogers’s arguments are reminiscent of those in his earlier opinion in Defoe, which established as the doctrine in our circuit alone that public-school officials have broad discretion to restrict student speech depending on the nature, not the effect, of the speech. Defoe ex rel. Defoe v. Spiva, 625 F.3d 324, 338 (6th Cir.2010) (Rogers, J., concurring) (controlling opinion). In this dissent, that erroneous doctrine is extended beyond the school setting and expanded to deny the applicability of past free-speech doctrine when a speaker is maliciously seeking publicity for certain religious views.
The fact that someone can come up with a novel method of attacking a clearly established doctrine, which novel attack has not previously been specifically rejected, does not detract from the doctrine’s being “clearly established.” Otherwise, no doctrine could ever be clearly established, as our law schools exist in large part precisely to teach how to come up with new theories. The one situation in which I might think that an issue of material fact remained would be if the disorder created by the attackers threatened to spill out to the general public, or to create a threat to general public safety. But the defendants here do not even make an effort to raise that as a factual argument, and an examination of the extensive video of the incident does not show a likelihood of violence to anyone other than the plaintiffs in this case.
Judge Rogers defends the police actions as mere “direction[s] to a citizen.” Rogers Dissent, at 276. Yet the police clearly infringed the liberty interests of the Bible Believers. The standard definition of an arrest is when a person “is not free to go.” If an officer gives a command “stay or we will arrest you,” that person is not free to go and is surely arrested. Similarly, here the police order was “leave, or we will arrest you.” The plaintiffs were not free to stay any more than you would be if the police came to your house and said, “come with us to our police car or we will arrest you”; you are not free to stay and are surely under arrest. See California v. Hodari D., 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (“An arrest requires either physical force ... or, where that is absent, submission to the assertion of authority.”).
But, Judge Rogers argues, if the police cannot force speakers to leave, those speakers will be able to “get the police to help [them] attack and disrupt something like a minority cultural identity fair, even if the police are not inclined to do so.” Rogers Dissent, at 274. The pellucid flaw *264 in Judge Rogers’s dystopian scenario is that there is no police obligation to assist speakers in communicating their message. The law simply requires the government to refrain from silencing speakers. Requiring officers to refrain from interfering with speech can hardly be equated with affirmatively enlisting unwilling officers to “help” speakers.
Judge Rogers’s opinion also has the disturbing implication that courts should decide who is a majority and who is a minority, and accord lesser rights to those whom judges deem a majority and greater rights to those whom they deem a minority. Rogers Dissent, at 274, 278. The dissent makes explicit what may be implicit in the views of some: that First Amendment rights only belong to those who “speak truth to power” and not those who “speak power to truth”; to those who “question authority” and not those who would “question those who question authority.” This is wrong both as a matter of doctrine and of practice. Again, no Supreme Court case indicates that your rights depend on whether you are “punching up” or “punching down,” and indeed virtually all of them hold to the contrary.
Further, in this specific circumstance it is highly dubious that the plaintiffs here, representatives of what most would consider an extreme and ill-mannered evangelical group, are imposing themselves on a minority. They were outnumbered in the immediate area, in a political jurisdiction (Dearborn) in which the “minority” is in a clear preponderance, and in a wider area (Wayne County) whose political leanings are clearly shown by the actions of the police both in this circumstance and in the previous correspondence in the record. It is both dangerous as a matter of doctrine and misleading on the facts to make anything at all in this case rest on the concepts of “majority” and “minority.”
Judge Rogers concludes his dissent by observing that it is “unfortunately ironic” that the Bible Believers could invoke “cases involving minority civil rights protests.” Rogers Dissent, at 278. But the real irony is that the very principle he articulates to allow the suppression of speech could just as easily be used against civil-rights protesters challenging racism or religious intolerance. The beauty of our First Amendment is that it affords the same protections to all speakers, regardless of the content of their message. If we encroach on the free-speech rights of groups that we dislike today, those same doctrines can be used in the future to suppress freedom of speech for groups that we like. I would have thought that if anything was “clearly established” in First Amendment law, it is that our view of “irony” does not trump the Constitution.